1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 | CARL MEEKS,                                    ) Case No.: 1:22-cv-0761 JLT CDB
                                                 )
12 |            Plaintiff,                        ) ORDER GRANTING IN PART PLAINTIFF'S
                                                 ) MOTION FOR ATTORNEY FEES, COSTS, AND
13 |    v.                                        ) EXPENSES
                                                 ) (Doc. 59)
14 | FCA US LLC, et al.,                          )
                                                 ) ORDER TERMINATING THE BILL OF COSTS
15 |            Defendants.                       ) AS MOOT
                                                 ) (Doc. 58)
16 | _____   )

17          Carl Meeks asserted that his Dodge Ram 1500—which was manufactured and/or distributed by

18   FCA US LLC—was defective and required multiple repairs.  He sought to hold FCA liable for

19   violations of the Song-Beverly Consumer Warrant Act and breach of the implied warranty of

20   merchantability.  (Doc. 1.)  The parties settled the underlying claims, and Meeks now seeks an award of

21   attorney fees and costs.  (Doc. 59.)  For the reasons set forth below, the motion is **GRANTED** in part,

22   in the modified amount of $19,364.50.

23   **I.      Background and Allegations**

24          Meeks alleges that he purchased a 2019 Dodge Ram 1500 "primarily for family or household

25   purposes."  (Doc. 1 at 3, ¶ 11.)  He contends that he "entered into a warranty contract with Defendant

26   FCA" regarding his Dodge Ram, "which was manufactured and/or distributed by Defendant FCA."

27   (*Id.* ¶ 9.)  Meeks asserts, "The warranty contract contained various warranties, including but not limited

28   to the bumper-bumper warranty, powertrain warranty, [and] emission warranty."  (*Id.*, ¶ 10.)

1

1    According to Meeks, "Defects and nonconformities to warranty manifested themselves within

2 the applicable express warranty period, including but not limited to, the electrical system, the engine,

3 [and] the transmission, among other defects and non-conformities." (Doc. 1 at 4, ¶ 14.) Meeks

4 "presented the Vehicle" for service and repairs several times between 2019 and 2021. (*Id.* at 9, ¶ 44;

5 *see also* Doc. 59-2 at 3-4, ¶¶ 6-14.)

6    Meeks first presented the truck for repairs due to "issues with the seats" with 1,000 miles on the

7 odometer, on May 19, 2019, and the dealer returned the truck to Meeks on the same day. (Doc. 59-2 at

8 3, ¶ 6.) He next took his Dodge Ram for repairs on June 19, 2019, reporting "the driver seat upper

9 cushion on the inner side" was uncomfortable, the truck shook when starting up, and was "rumbling

10 when coming to a stop." (*Id.*, ¶ 7.) He received the truck two days later. (*Id.*) On July 11, 2019,

11 Meeks called FCA's "Proactive ECS Outbound Program reporting that there was a rattle in the truck

12 and that it misfired." (*Id.*, ¶ 8.) The following month, Meeks took the truck to an authorized dealership

13 "reporting the vehicle seems to misfire, shook, and loses power." (*Id.*, ¶ 9.)

14    In 2020, Meeks continued to report issues with his Dodge Ram truck and sought additional

15 repairs. (Doc. 59-2 at 3-4, ¶¶ 10-13.) On June 11, 2020, with 21,000 miles on the truck's odometer,

16 Meeks informed an authorized representative that his truck rumbled, was "not sparking properly," and

17 got stuck in first gear. (*Id.*, ¶ 10.) The following month, Meeks took his truck to FCA's authorized

18 repair facility, reporting the truck cab shook with no power, made "a whomping noise," and "would

19 not shift out of first" on three occasions. (*Id.* at 4, ¶ 11.) A "repair technician performed a TCM flash

20 update," and returned the truck to Meeks on the same day. (*Id.*) In September 2020, "with 25,253

21 miles on the odometer," Plaintiff returned the truck to a repair facility, reporting "the check engine

22 light was on," the truck was losing power, and the cab was shaking. (*Id.*, ¶ 12.) A "technician

23 removed cylinder 3 ignition coil and spark plugs and found misfire," and performed repairs "under

24 warranty." (*Id.*) The facility returned the truck to Meeks two days later. (*Id.*)

25    Meeks presented his truck for repairs for the sixth, and final, time on April 14, 2021. (Doc. 59-

26 2 at 4, ¶ 14.) At that time, Meeks reported "the engine shakes and loses power and has gotten stuck in

27 first gear, and that the vehicle smells of coolant." (*Id.*) The authorized repair facility "was unable to

28 verify the engine issue." (*Id.*) Meeks' truck was returned to him eight days later. (*Id.*)

On July 26, 2021, Meeks filed a complaint in Los Angeles Superior Court against FCA, alleging violations of the Song-Beverly Act.  (Doc. 59-2 at 5, ¶ 15.)  However, Meeks later filed a request for dismissal of the entire complaint from the state court.  (*Id.* at 6, ¶ 27.)

On June 22, 2022, Meeks initiated this action in the district court, asserting this Court has diversity jurisdiction pursuant to 28 U.S.C § 1332.  (Doc. 1 at 2.)  Meeks seeking to hold FCA liable for violations of the Song-Beverly Act—including Cal. Civ. Code §§ 1793.2(d), 1793.2(b), and 1793.2(a)(3)—and breach of the implied warranty of merchantability.  (*See* Doc. 1 at 8-11.)  Meeks' prayer for relief included, but was not limited to: general, special, actual, consequential, and incidental damages; "reimbursement and/or restitution of all monies expended;" diminution in value; civil penalties totaling twice the actual damages; and "reasonable attorneys' fees."  (*Id.* at 12.)

Meeks notified the Court that he "accepted Defendant FCA US LLC's Offer of Judgment Pursuant to Fed. R. Civ. P. 68 in the amount of $137,384.88."  (Doc. 48 at 2.)  The Court entered judgment and closed the case on December 14, 2023.  (Docs. 49, 50.)  Pursuant to the terms of the executed "Offer of Judgment," the parties agreed that if they were "unable to resolve attorney's fees and costs, Plaintiff[] may seek reasonable costs, expenses and attorneys' fees pursuant to a properly noticed motion…" (Doc. 48 at 5, ¶ 3.)

The parties also stipulated to two extensions of time to file a motion for attorneys' fees and costs, which the Court approved.  (Docs. 52, 53, 54, 55.)  However, the Court denied the third request on May 8, 2024, noting the parties did not provide "any explanation as to why they have been able to meet and confer in the five months since the Court entered judgment."  (Doc. 57 at 1.)  Meeks filed a Bill of Costs on May 29, 2024, and the pending motion for attorneys' fees and costs on May 30, 2024. (Docs. 58, 59.)  The Court ordered FCA to file any opposition no later than September 13, 2024, and warned FCA the failure to do so would result in the motion being deemed unopposed.  (Doc. 62.)  FCA did not file any opposition, and the time to do has expired.

## II.    Awards for Fees, Costs, and Expenses

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law."  *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold*

3

1    *v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action,

2    the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of

3    calculating the fees").

4              As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant

5    ordinarily is not entitled to collect a reasonable attorneys' fee from the loser.'"  *Travelers Casualty &*

6    *Surety Co. of Am. v. Pacific Gas & Electric Co*., 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline*

7    *Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)).  However, a statute allocating fees to a

8    prevailing party can overcome this general rule.  *Id*. (citing *Fleischmann Distilling Corp. v. Maier*

9    *Brewing Co*., 386 U.S. 714, 717 (1967)).  Under California's Song-Beverly Act, a prevailing buyer is

10   entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses,

11   including attorney's fees based on actual time expended, determined by the court to have been

12   reasonably incurred by the buyer in connection with the commencement and prosecution of such

13   action."  Cal. Civ. Code § 1794(d).

14             The Song-Beverly Act "requires the trial court to make an initial determination of the actual

15   time expended; and then to ascertain whether under all the circumstances of the case the amount of

16   actual time expended and the monetary charge being made for the time expended are reasonable."

17   *Nightingale v. Hyundai Motor America*, 31 Cal.App.4th 99, 104 (1994). The court may consider

18   "factors such as the complexity of the case and procedural demands, the skill exhibited and the results

19   achieved."  *Id.*  If the court finds the time expended or fee request "is not reasonable under all the

20   circumstances, then the court must take this into account and award attorney fees in a lesser amount."

21   *Id.*  "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were

22   'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'"  *Id.* (quoting

23   *Levy v. Toyota Motor Sales, U.S.A., Inc*., 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of*

24   *North America, LLC*, 4 Cal. App. 5th 462, 470 (2016) (same).

25   **III.     Request for Judicial Notice**

26             Meeks requests that the Court take judicial notice of 19 orders issued by various courts in

27   California.  (Doc. 60 at 2-5.)  In addition, he requests judicial notice of the "Declaration of Bryan

28   Kemnitzer in support of Plaintiff Susan Soderstrom's Motion for Attorneys' fees, costs, and

                                                    4

expenses." which was filed in San Francisco County Superior Court, Case No. CGC15544475.  (*Id.*; *see also* Doc. 59-1 at 73-85.)

The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Toward this end, the Court may take judicial notice of documents filed and issued in other courts. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Significantly, "the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable."  *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004); *see also Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 857 n.1 (9th Cir. 2008) (taking judicial notice of a court order "because it is a matter of public record"); *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1097 (E.D. Cal. 2010).  In addition, to the extent a declaration identifies fees awarded in other cases, such information is subject to judicial notice "because the awards are easily verified on the courts' dockets."  *See S.L. v. Upland Unified Sch. Dist.*, 2015 U.S. App. LEXIS 18756, at *6 (9th Cir. May 7, 2015).  However, the Court may not take judicial notice of other facts in a declaration.  *Id.*

Most of the cases identified by counsel are from forums outside the Eastern District, including: state courts in San Francisco County, Los Angeles County, Alameda County; and federal courts in the Northern, Central, and Southern Districts of California.  (*See* Doc. 60 at 2-5.)  As discussed below, the Court must determine whether the hourly rates requested are reasonable for the local forum.  Thus, the fees awarded in outside forums are not relevant to the Court's determination, and the Court declines to take judicial notice of the decisions issued by other federal courts and state courts outside of the Eastern District.  For this reason, the Court also declines to take judicial notice of the declaration filed by Bryan Kemnitzer in San Francisco County Superior Court.

On the other hand, counsel identified two orders issued by state courts in counties within the Eastern District:

> 1.  An order in *Flores v. FCA US, LLC* (Sacramento County Superior Court, Case No. 34-2016-00192221-CU-BC-GDS) issued on July 28, 2020, which is attached as Exhibit 7 to the Declaration of Payam Shahian.

1
2

      2.   An order in *Miranda v. FCA* (Sacramento County Superior Court, Civil
Case No. 34-2020-00276881-CU-BC-GDS), issued on February 4, 2022,
which is attached as Exhibit 14 to the Declaration of Payam Shahian.

3   (Doc. 60 at 3-4, ¶¶ 7, 14.)  Because hourly rates approved as reasonable in these counties are relevant

4   to the Court's analysis— and the orders are subject to judicial notice—the Court grants the request for

5   judicial notice as to these two exhibits only.  *See Reusser*, 525 F.3d at 857 n.1; *Southern Cal. Edison*

6   *Co.*, 300 F. Supp. 2d at 974.

7   **IV.     Discussion and Analysis**

8         It is undisputed that Meeks qualifies as a prevailing buyer under the Song-Beverly Act and is

9   thus entitled to fees, costs, and expenses.  Indeed, pursuant to the Rule 68 offer, Meeks "may seek

10   reasonable costs, expenses and attorneys' fees ..."  (Doc. 48 at 5, ¶ 3.)  Thus, the Court must determine

11   whether the requested fees and costs are reasonable.

12         **A.     Requested fees**

13         Meeks seeks fees in the amount of $23,443.00 for Strategic Legal Practices, APC, plus "an

14   additional $3,500.00 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply, and

15   attend the hearing on this Motion."  (Doc. 59 at 2.)  Meeks also requests a 1.35 multiplier, which would

16   enhance the lodestar by $8,205.05.

17         1.     Hours expended

18         A fee applicant must provide records documenting the tasks completed and the amount of time

19   spent.  *Hensley v. Eckerhart,* 461 U.S. 424, 424 (1983); *see also Welch v. Metropolitan Life Ins. Co.,*

20   480 F.3d 942, 945-46 (9th Cir. 2007). Under California law, a court "must carefully review attorney

21   documentation of hours expended" to determine whether the time reported was reasonable.  *Ketchum v.*

22   *Moses*, 24 Cal.4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)).  Thus,

23   evidence provided by the fee applicant "should allow the court to consider whether the case was

24   overstaffed, how much time the attorneys spent on particular claims, and whether the hours were

25   reasonably expended."  *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). The

26   court must exclude "duplicative or excessive" time from its fee award.  *Graciano v. Robinson Ford*

27   *Sales, Inc.*, 144 Cal.App.4th 140, 161 (2006); *see also Ketchum*, 24 Cal.4th at 1132 ("inefficient or

28   duplicative efforts [are] not subject to compensation").

According to the billing records, lawyers and professional staff at SLP worked a total of 49.30 hours on the action.  (Doc. 59-1 at 222-223.)  The time includes tasks including—but not limited to— drafting the complaint, responding to FCA's motion to dismiss, discovery, conferences and correspondence with Meeks and opposing counsel, reviewing the Rule 68 offer, and drafting the pending motion.  (*Id.*)  Review of the provided firm records does not reveal the inclusion of any improper tasks, such as clerical work.  However, there is a single instance of billing an excessive time, as counsel reported 0.30 hour to "Draft and finalize [Plaintiff's] Declination of Magistrate" on October 26, 2022.  (Doc. 59-1 at 222.)  The Court's form to consent or decline to the jurisdiction of a magistrate judge is a single page, check-box form that takes only moments to complete.  (*See* Doc. 17.)  As a result, the Court reduces the time for Ariel Harman-Holmes for this task from 0.30 hour to 0.10 hour. *See Calderon v. Astrue,* 2010 WL 4295583 at *5 (E.D. Cal. Oct. 22, 2010) (observing the consent form is a "simple, check-the-box type form[] that require[s] little time and effort to complete and file," and awarding only 0.1 hour for its completion).

As noted above, counsel request the Court award "an additional $3,500.00 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply, and attend the hearing on this Motion." (Doc. 59 at 2.)  Because the motion remains unopposed and the Court vacated the hearing (Doc. 62), counsel was not required to complete the anticipated tasks.  Therefore, the Court declines to add the requested $3,500 to the lodestar calculation.

## 2.   Hourly rates

Attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing in the community for similar work"). In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits."  *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008).  Thus, when a case is filed in the Eastern District of California, this district "is the appropriate forum to establish the lodestar hourly rate...." *See Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011); see *also Gordillo v. Ford Motor Co*., 22014 WL 2801243 (E.D. Cal. June 19, 2014) (in a diversity action awarding fees under the Song-Beverly Act, the court looked to hourly rates

1    in the Eastern District and adjusted the lodestar accordingly).

2          Fee applicants bear the burden to establish that the requested rates are commensurate "with

3    those prevailing in the community for similar services by lawyers of reasonably comparable skill,

4    experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  Applicants meet this burden by producing

5    "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line

6    with those prevailing in the community for similar services by lawyers of reasonably comparable skill,

7    experience and reputation." *Id.*; *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110-11 (9th

8    Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the

9    community ... are satisfactory evidence of the prevailing market rate.").  The Court may apply "rates

10   from outside the forum ... 'if local counsel was unavailable, either because they are unwilling or unable

11   to perform because they lack the degree of experience, expertise, or specialization required to handle

12   properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987

13   F.2d 1392, 1405 (9th Cir. 1992)).  Because Meeks does not report that local counsel was unwilling to

14   prosecute his claims or unavailable, rates from outside the forum may not be applied.  Rather, the Court

15   must determine whether the hourly rates applied by SLP align with those in the Eastern District.

16                          *a.      Experience of counsel and staff*

17         Payam Shahian, the managing partner of SLP, provided information regarding the experience of

18   the individuals who worked on the action in his declaration in support of the fees request.  (*See* Doc.

19   59-1 at 15-23, ¶¶ 47-64.)  Tionna Carvalho was admitted to the bar in 2014 and became a partner at the

20   firm in 2022.  (*Id.* at 16-17, ¶¶ 51-52.)  Mr. Shahian reports that Ms. Carvalho "successfully argued

21   dozens of summary judgment motion[s]" and went to trial on many lemon law actions.  (*Id.*, ¶ 51.)

22   Elizabeth Larocque began practicing law in 2002 and focuses on lemon law litigation.  (*Id.* at 19, ¶ 59.)

23   Angel Baker was admitted to the bar in 2003 and "is a contract attorney retained by SLP," specializing

24   "in civil litigation and law and motion practice."  (*Id.* at 15, ¶ 47.)  Anna Weiser was admitted to the

25   bar in 2010 and practiced for about 13 years prior to working on this action.  (*Id.* at 20, ¶ 63; *see also*

26   *id.* at 224.)  Mark Gibson was admitted to practice in 2008 and practiced about 14 years before his

27   work on this action in 2022.  (*Id.* at 18, ¶ 53; *id.* at 224.)  Ariel Harman-Holmes and Timothy Kenney

28   were admitted to the California bar in 2017 and had practiced law between five and six years when they

worked on the action.  (*Id.* at 18-20, ¶¶ 55, 57; *see also id.* at 224.)  Nino Sanaia was admitted to practice in Georgia in 2015 and passed the California bar in 2022.  (*Id.* at 20, ¶ 61.)  Hector Calderon is a legal assistant at SLP, but there is no information provided related to his professional experience.  (*Id.* at 16, ¶ 49.)

<i>b.    Rates applied by counsel</i>

The firm of SLP requests hourly rates ranging from $400 to $595 for attorneys and $285 for the legal assistant.  (Doc. 59-1 at 224.)  Mr. Shahian asserts that "based on [his] own experience and review of relevant court orders in Central and Northern California, as well as across the State," he believes the hourly rates requested are "reasonable and … the prevailing rates in the community."  (*Id.* at 15, ¶ 46.)  In support of this assertion, Mr. Shahian refers to many cases in which the courts approved the requested hourly rates either for SLP attorneys or individuals with "similar experience."  (*See id.* at 15-21, ¶¶ 46-64.)  However, most the cases identified occurred in federal and state courts within the Central and Northern Districts of California.  (*See id.*)  These cases do not offer the Court any assistance in determining the reasonableness of the rates for the proper local forum: the Eastern District.  Thus, the Court addresses only the few cases cited within the Eastern District, including: *Zakskorn v. Am. Honda Motor Co.*, 2015 WL 3622990, at *12 (E.D. Cal. June 9, 2015); *Flores v. FCA US, LLC*, Sacramento Super. Ct., Case No. 34-2016-00192221-CU-BC-GDS (July 28, 2020 Order) [Doc. 59-1 at 90-97]; *Miranda v. FCA*, Sacramento Super. Ct., Civil Case No. 34-2020-00276881-CU-BC-GDS (Feb. 4, 2022 Order) [Doc. 59-1 at 156-160]).

Although Mr. Shahian does not seek fees in this action, he asserts that in *Zakskorn*, "Judge Mueller in 2015 approved [his] requested rate of $595/hr."  (Doc. 59-1 at 6, ¶ 6.)  *Zakskorn* was a class action in which the Court was required to review the terms of the proposed settlement, including the reasonableness of the requested fees for the several firms who worked on the action.  *Id.*, 2015 WL 3622990, at *12-15.  The Court noted that SLP requested the hourly rate of $595 for Mr. Shanian, $550 for senior counsel, and $325 for an associate.  *Id.* at *12.  Addressing the reasonableness of the hourly rates requested by all the firms—each of which were based outside the Eastern District—the Court determined "the hourly rates submitted by senior counsel in particular are significantly more than the prevailing Eastern District rate."  *Id.* at *14.  The Court observed that "class counsel … recognized as

9

much through application of the inverse multiplier of .75 in addition to [a] 10 percent fee reduction." *Id.* The Court "calculated an adjusted lodestar" using hourly rates aligned with the local forum to determine whether the proposed lodestar was reasonable. *Id.* at *15. Upon doing so, the Court determined: "While the individual billing rates for partners may be higher than the prevailing rates in the Eastern District, the inverse multiplier, lower rates for associates, and the voluntary 10 percent haircut render the figure reasonable and consistent with awards in this district." *Id.* Given the voluntary reductions to the lodestar, the Court did not adopt the rate of $595, but instead found the adjusted lodestar was reasonable. Significantly, with the inverse multiplier of .75 and an additional 10% reduction, the hourly rate of $595 was reduced to approximately $402.

In support of the rates requested, counsel also cite *Flores* and *Miranda*, from Sacramento County Superior Court, which were attached to the declaration of Mr. Shahian. (Doc. 59-1 at 90-97, 156-160.) In *Miranda*, the state court offered little analysis to support its conclusion that "the requested hourly rates are reasonable." (*See id.* at 157-158.) The *Miranda* court observed the SLP requested fees ranging from $285 to $550, which counsel asserted were "appropriate given the relative experience and qualifications of these attorneys and are similar to the rates awarded by Sacramento Superior Court, the U.S. District Courts for the Northern District of California, and courts throughout California." (*Id.* [citation omitted].) The court found "similar fees to those requested have been awarded previously in lemon law cases," and accepted the hourly rates. (*Id.* at 159.) The court did not identify the admission dates or experience of counsel, or otherwise explain how it reached the conclusion that the rates were reasonable. Thus, the *Miranda* decision also offers little assistance to this Court.

In *Flores*, counsel from SLP requested rates ranging from $325 to $460 for attorneys who were admitted to practice between two and eleven years. (Doc. 59-1 at 93.) The court observed: "Plaintiff's counsel has attached a number of prior court orders to demonstrate their hourly rates are reasonable." (*Id.* at 94.) The court "surveyed the prior orders and declarations submitted with the moving papers," and found "the requested hourly rates are reasonable for this type of case, in this community, for attorneys of similar skill and experience." (*Id.*) However, the state court did not identify the forums of the reviewed cases or provide any analysis to explain the conclusion that the rates were reasonable. (*See id.* at 93-94.) Thus, the analysis in *Flores* offers little support to show the rates are reasonable.

10

1             c.      *Adjustments to rates for counsel*

2          After *Miranda* and *Flores*, the Sacramento County Superior Court reviewed a motion for fees

3    brought by SLP in a lemon law case and found decisions cited by SLP from other forums—including

4    courts in San Francisco, Los Angeles; Alameda; San Diego, and the United States District Courts for

5    the Northern, Central, and Southern Districts—were "irrelevant to the merits of [the] motion."  *Lewis v.*

6    *Hyundai Motor Am.*, 2023 Cal. Super. LEXIS 5145 (Jan. 27, 2023).  The court observed that SLP

7    identified "*one* Sacramento superior court [that] concluded in 2020 … [the] hourly rates for SLP

8    attorneys from $325 to $460 were reasonable" and another case approving the rates of $425 and $450

9    for Tionna Dolin.  *See id.* at *20-21 (emphasis in original) *see also Flores* (approving the hourly rates

10   of $325 to $460 [Doc. 59-1 at 93-94]) and *Miranda* (approving the rates identified for Ms. Carvalho,

11   née Dolin [Doc. 59-1 at 157-158]).  The *Lewis* court observed that SLP "conveniently [made] no effort

12   to cite to cases out of the … Eastern District of California," where hourly rates are generally "lower

13   than those awarded by other district courts in the state."  *Id.* (citations omitted).  After considering "the

14   rulings on similar motions out of other departments ... [and the] Eastern District, and the Court's own

15   knowledge and experience with awarding fees in this court in similar contexts," the court concluded the

16   hourly rates sought by SLP were "slightly high" and declined to award the rates requested.  *Lewis*, 2023

17   Cal. Super. LEXIS 5145 at *22.  The court reduced the hourly rate for Gregory Yu from $595 to $500.

18   *Id.* at *19, 23.  The rates for attorneys admitted to practice between 2010 and 2013 were reduced to

19   $400, and the rates for attorneys admitted between 2014 and 2018 were reduced to $350.  *Id.* at *19-20,

20   23.[1]  The rates for attorneys admitted to practice between one and three years before working on *Lewis*

21   were reduced to $300.  *Id.* at *20, 23.  Finally, the requested rate for a law clerk at SLP was reduced

22   from $325 to $150.  *Id.*  Thus, the court rejected the rates previously accepted by Sacramento County

23   Superior Court with little analysis in *Flores* and *Miranda* and reduced the rates to align with the local

24   forum.

25          This Court has also performed a comprehensive survey of fees awarded in the Eastern District,

26   and finds the current hourly rates range from $200 to $750, with rates exceeding $600 reserved for

27

28   _____

     [1] In reducing the rate for Ms. Dolin, the Court awarded $350 for her time as an associate but increased the hourly rate
     to $450 for time in 2022, after she became a partner at the firm.  *Lewis*, 2023 Cal. Super. LEXIS 5145 at *23.

attorneys who have practiced approximately 30 years. *See, e.g., Owen v. Hyundai Motor Am.*, 2024 WL 3967691, at *3-4 (E.D. Cal. Aug. 28, 2024) (collecting cases, and finding the hourly rates in cases arising under the Song-Beverly Act range from $200 to approximately $600); *Cianchetta*, 2022 WL 2160556, at *6 (reducing the hourly rate for attorneys in their first year of practice to $200); *Davis v. Mercedes-Benz USA, LLC*, 2022 WL 16529527, at *2 (E.D. Cal. Oct. 27, 2022) (reducing the rate in a lemon law action to $250 for attorneys who practiced law for less than five years); *Siafarikas*, 2022 WL 16926265, at *3 (approving the rate of $250 for an attorney "who has practiced law for three years" and $500 for an attorney who practiced law for 21 years); *Aoki v. Gilbert*, 2022 WL 956949, at *2 (E.D. Cal. May 29, 2022) (observing the Court found "$450 an hour [was] a reasonable rate for an attorney with fifteen years of experience" [citation omitted]); *Garybo v. Leonardo Bros*, 2021 WL 449350, at *5 (E.D. Cal. Sept. 30, 2021) (adopting the hourly rate of $500 for attorneys admitted to practice for 20 years); *Mostajo v. Nationwide Mut. Ins. Co.*, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (approving of "hourly rates ranging from $650 through $750" for "attorneys with over thirty years of experience" for purposes of calculating a lodestar). With these parameters in mind, the hourly rates for counsel must be modified to align with rates in the Eastern District.

The rates for Elizabeth Larocque and Angel Baker, who have practiced law for more than 20 years, are adjusted to $525. The rates for Mark Gibson and Anna Weiser, who practiced law for approximately 13-14 years before working on the case, are adjusted to $450. The time worked by Tionna Carvalho, who was admitted to practice in 2014, is adjusted to $400 per hour to align with her 7-10 years of experience when working on this matter, while recognizing the fact she became a partner at SLP during the pendency of this action. The rate for Nino Sanaia is adjusted to $350, for her eight years of experience. Finally, the hourly rates for Ariel Harman-Holmes and Timothy Kenney—who were both admitted to practice in 2017 and practiced law for 5-6 years when they worked on the action—are adjusted to $300.

### d.      Rate for SLP's legal assistant

Counsel request the rate of $285 for Hector Calderon, a legal assistant at SLP. (Doc. 59-1 at 224.) Significantly, this rate is also higher than the prevailing market rate for legal assistants in the Eastern District. *See, e.g., Lizarraga v. Growers' Choice, Inc.*, 2023 WL 2999965, at *2 (E.D. Cal.

Apr. 17, 2023) (finding the requested rate "$100 to $125 for legal clerks and legal assistants … are reasonable" for the Eastern District).  However, the cases cited in *Lizarraga* regarding legal assistants approved the hourly rate of $100 approximately ten years ago, between 2012 and 2013.  *Id.* (citing *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, *20 (E.D. Cal. Nov. 27, 2012) [approving the hourly rate of $100 for legal assistants]; *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452–53 (E.D. Cal. 2013) [awarding $100 per hour for legal assistants]).  In recognition of rising hourly rates, the Court finds it appropriate to award a higher rate for a legal assistant than those awarded in *Franco* and *Barbosa*.  *See Mohamed v. Barr*, 562 F.Supp.3d 1128, 1135 (E.D. Cal. 2022) (awarding the hourly rate of $125 for non-attorney staff).  Consequently, the rate for Mr. Calderon is adjusted to $125, which the Court finds reasonable for non-attorney staff in the Eastern District.

### 3.      Lodestar calculation

Based upon the survey of fees awarded recently in the Eastern District and the Court's own knowledge, these adjusted rates are reasonable and align with prevailing local market rates.  *See Cianchetta*, 2022 WL 2160556, at *6; *Garybo*, 2021 WL 449350, at *5; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).  With the hourly rates set forth above, the adjusted lodestar totals $18,962.50:

|  | Time | Rate | Lodestar |
|---|---|---|---|
| Hector Calderon | 3.0 | $125 | $375.00 |
| Angel Baker | 7.2 | $525 | $3,780.00 |
| Tionna Carvalho | 3.3 | $400 | $1,320.00 |
| Mark Gibson | 1.6 | $450 | $720.00 |
| Ariel Harman-Holmes | 13.8 | $300 | $4,140.00 |
| Timothy Kenney | 4.2 | $300 | $1,260.00 |
| Elizabeth Larocque | 6.5 | $525 | $3,412.50 |
| Nino Sanaia | 3.2 | $350 | $1,120.00 |
| Anna Weiser | 6.3 | $450 | $2,835.00 |
| *Total* |  |  | **$18,962.50** |

This adjusted lodestar is considered presumptively reasonable.  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

///

13

1            4.     Application of a multiplier

2            Once a court calculates the lodestar, it may "adjust the lodestar upward or downward by using a

3    multiplier," but only the "rare" or "exceptional" case justifies an upward adjustment. *Van Gerwen*, 214

4    F.3d at 1045.  In evaluating a request to adjust the lodestar, the Court considers: "(1) the novelty and

5    difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which

6    the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature

7    of the fee award." *Mo. Rahman v. Us LLC*, 594 F. Supp. 3d 1199, 1207 (C.D. Cal. 2022) (quoting

8    *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001)).  Any use of a multiplier must be "supported both

9    specific evidence on the record and detailed findings by the lower courts that the lodestar amount is

10   unreasonably low or unreasonably high." *Van Gerwen*, 214 F.3d at 1045 (internal quotation marks,

11   citations omitted.)

12           In requesting the application of a 1.35 multiplier, counsel do not assert this case presented novel

13   or difficult questions of law or fact.  (*See* Doc. 59 at 17-19.)  Indeed, "the issues in lemon law litigation

14   are not complex and do not require a significant amount of legal analysis or novel pleading." *See Steel*

15   *v. General Motors Co.*, 912 F. Supp. 724, 746 (N.J. Dist. 1995).  Further, counsel report a limited

16   amount of time discovery and it does not appear the facts were significantly disputed.  (*See* Doc. 59-1

17   at 222-223; *see also* Doc. 59-2 at 5-7, Carvalho Decl. ¶¶ 15-44.)  Counsel also do not demonstrate

18   significant skills were needed to pursue Meeks' claims.  There is no evidence this action precluded the

19   attorneys from working other cases.  To the contrary, the attorneys and professional staff at SLP who

20   worked on this action—9 individuals in total—expended approximately 40 hours of work on this action

21   in approximately 17 months, from the filing of the complaint in the district court through the

22   acceptance of the Rule 68 offer on October 18, 2023.  (*See* Doc. 59-1 at 222-223.)  Finally, the

23   contingent nature of the fee award is outweighed by the other factors, particularly in this action where it

24   appears the issues to be resolved were minimal.[2]  Accordingly, the Court finds the lodestar amount of

25   $18,962.50 is reasonable and declines to award the requested multiplier.

26

27   ──────────────
28   [2] Moreover, the Song-Beverly Consumer Warranty Act "is a mandatory fee-shifting statute which eliminates any uncertainty about whether costs will be awarded to the prevailing party." *Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1206 (C.D. Cal. 2022).

1          **B.      Expenses and costs**

2          In general, an award of costs in the district court is governed by Federal Rule of Civil Procedure

3   54(d) and not applicable state law, even in diversity actions.  *See Champion Produce, Inc. v. Ruby*

4   *Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt.,*

5   *Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)).  This is because "federal courts sitting in diversity

6   apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660,

7   666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).  The award of costs is a

8   procedural matter. *See, e.g., Kolb v. Turner*, 2008 WL 5478575, at *13 (E.D. Cal. Dec. 31, 2008)

9   ("Costs, as a general matter, are procedural in nature such that an award of costs is governed by federal,

10  not state, law"); *Baltazar v. Mercedes-Benz USA, LLC*, 2024 WL 2334462, at *1 (C.D. Cal. Apr. 14,

11  2024) (finding federal procedural law governs a request for costs, rather than the Song-Beverly Act's

12  costs provision).  Thus, federal procedural law governs Meeks' request for an award of costs.

13         Rule 54 provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

14  This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may

15  refuse to award costs within its discretion."  *Champion Produce*, 342 F.3d at 1022.  "[A] district court

16  need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for

17  denying costs are not sufficiently persuasive to overcome the presumption in favor of an award."  *Save*

18  *Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).  For example, costs may be declined in

19  light of "a losing party's limited financial resources" or if there was "misconduct by the prevailing

20  party." *Champion Produce*, 342 F.3d at 1022.

21         The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule

22  54(d)."  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987).  Costs that may be taxed

23  under 28 U.S.C. § 1920 include:

24                   (1) Fees of the clerk and marshal;

25                   (2) Fees for printed or electronically recorded transcripts necessarily
                     obtained for use in the case;

26
                     (3) Fees and disbursements for printing and witnesses;

27
                     (4) Fees for exemplification and the costs of making copies of any
28                   materials where the copies are necessarily obtained for use in the case;

15

1                (5) Docket fees under section 1923 of this title;

2                (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special

3                interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citation omitted).

Meeks seeks an award of $745.75 for costs.[3]  (Doc. 59 at 19; Doc. 59-1 at 223-224.)  The costs requested include: the Court's filing fee ($402.00); FedEx expenses for mailing documents to Meeks ($50.80); and payments to First Legal, a service used to mail and eFiling various documents ($292.95). (Doc. 59-1 at 223-224.)  Importantly, "[c]ommunication charges like courier [and] mail ... costs cannot be taxed" under Section 1920. *Nat'l Union Fire Ins. Co. v. Allied Prop. & Cas. Ins. Co.*, 2014 WL 3529980 at *1 (E.D. Cal. July 16, 2014) (citing *El-Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C.1995)).  Likewise, the private e-filing costs may not be taxed and are not reasonable given that counsel may have e-filed the documents without such costs. *See Owen*, 2024 WL 3967691, at *9 (declining SLP's request for costs for the e-filing performed by First Legal).  With these nontaxable deductions, the Court approves the request for costs in the modified amount of $402.00.

**V.      Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1.      Plaintiff's motion for fees is **GRANTED** in the modified amount of $18,962.50.

2.      Plaintiff's motion for costs is **GRANTED** in the modified amount of $402.00.

3.      Plaintiff's Bill of Costs (Doc. 58) is terminated as **MOOT**.

IT IS SO ORDERED.

Dated:    **October 5, 2024**

UNITED STATES DISTRICT JUDGE

---

[3] The day before this motion was filed, Meeks filed a "Bill of Costs," requesting the total of $745.75.  (Doc. 58 at 1.) Given that the Court now addresses the motion, the Bill of Costs is MOOT.